UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BRIAN DEGRAFFENREID,

        Petitioner,

    -v-

WILLIAM LEE, SUPERINTENDENT,
EASTERN CORRECTIONAL FACILITY,

        Respondent.
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/24/2020

17-CV-5346 (VEC)

MEMORANDUM OPINION
AND ORDER

VALERIE CAPRONI, United States District Judge:

  Petitioner Brian Degraffenreid filed a petition for a writ of habeas corpus on July 14, 2017, pursuant to 28 U.S.C. § 2254 (the "Petition"). (Dkt. 1). On August 9, 2017, this Court referred the action to Magistrate Judge Fox for the preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b). (Dkt. 4). On February 25, 2019, Judge Fox issued his Report and Recommendation (the "R&R") recommending that the Petition be denied. (Dkt. 20). Petitioner has filed a timely objection to the R&R. (Dkt. 23). For the following reasons, the R&R is rejected in part and adopted in part as modified, and the Petition is DENIED.

## BACKGROUND

  On January 12, 2012, Petitioner was convicted, after a jury trial, of manslaughter in the first degree, and sentenced to a term of eighteen years imprisonment and five years of post-release supervision. Pet'r's Mem. of Law (Dkt. 13) at 1. Petitioner and his codefendant, Elmer Castillo, had been charged with multiple crimes after they assaulted Jonathan Jiminez, who ultimately died from his wounds. R. & R. at 1–2.

1

Earlier on the day of the assault, Petitioner got into a brief fight with a friend of Jiminez outside the friend's apartment. Pet'r's Mem. of Law at 6. Petitioner returned with Castillo later that day and stood outside the apartment building for ten hours. *Id.*; State's Opp. (Dkt. 10) at 3. Around 11:00 p.m., Jimenez, who had been in and out of his friend's apartment several times that day, left; Petitioner and Castillo followed and attacked him. Pet'r's Mem. of Law at 6–7. Jiminez died five days later. *Id.* at 11.

The evidence at trial showed that Petitioner punched Jiminez and Castillo struck him on the head with a tire iron. R. & R. at 1–2. Relying on video footage portraying the moments before the attack, defense counsel argued that Petitioner did not share his codefendant's intent to cause harm. *Id.* at 2. The video showed Castillo, armed with the tire iron, trailing Petitioner by a few steps immediately before the attack. *Id.* Defense counsel used the video to argue that Petitioner did not know that Castillo had a tire iron and therefore could not have shared Castillo's intent to harm. *Id.*; Pet'r's Mem. of Law at 13–14; State's Opp. at 9. Confident in this strategy, defense counsel decided to forego an instruction for second-degree manslaughter, which required only recklessness, as opposed to the intent required for first degree manslaughter. R. & R. at 6–7. He argued that Petitioner was guilty only of assault. *Id.* at 6.

Petitioner's defense relied heavily upon the surveillance footage, but the State was able to undermine the defense on summation. The State played video taken ten minutes before the attack showing Petitioner and Castillo walking next to each other while Castillo twirled the tire iron. *Id.* at 2. The prosecutor argued that "there can be no argument" that Petitioner knew Castillo was armed with a tire iron. *Id.* The jury asked to see the earlier portion of the video on the third and final day of deliberations, playing it several times; an hour later, the jury returned a

verdict convicting both Petitioner and Castillo of first-degree manslaughter.  *Id.*; Pet'r's Mem. of Law at 17–18.

Petitioner filed a post-judgment motion asserting ineffective assistance of counsel based on his counsel's failure to carefully review flawed video footage (portions of the video played at double-speed or in reverse).  In support, defense counsel submitted an affirmation stating that he had reviewed the video on his office computer but had not reviewed it in slow motion on a larger screen; because he never did so, he did not notice that in an earlier portion of the tape, when Castillo and Petitioner were walking together, the tire iron was clearly visible in Castillo's hand. R. & R. at 6.  Defense counsel also stated that he would have asked the court to charge the jury on the lesser included offense of second-degree manslaughter had he been fully aware of all of the contents of the video.  R. & R. at 7.

Petitioner's motion was denied, and the Appellate Division, First Department, affirmed. *People v. Degraffenreid*, 138 A.D.3d 456 (N.Y. App. Div. 2016).  The New York Court of Appeals summarily affirmed.  *People v. Degraffenreid*, 29 N.Y.3d 935, 937 (2017).

## DISCUSSION

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

Petitioner presents three objections to the R&R's recommended denial of Petitioner's ineffective assistance of counsel claim.  *See* Pet'r's Obj. (Dkt. 23) at 4.  The Court sustains the first, but overrules the second and third.

3

## I. Counsel's Deficient Performance

Petitioner objects that Judge Fox incorrectly characterized his claim of ineffective assistance of counsel as "conclusory" and faulted Petitioner for not citing to Supreme Court precedent for the proposition that relying on videotape footage to construct a defense without fully investigating it constitutes ineffective assistance of counsel under *Strickland*. Pet'r's Obj. at 4; *see* R. & R. at 11. Because Petitioner need not cite to factually indistinguishable Supreme Court precedent to succeed on his theory, the Court sustains Petitioner's first objection.

28 U.S.C. § 2254 provides, in pertinent part, that a habeas petition can only be granted if the state court's adjudication of the claim "resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (emphasis added). Those two phrases carry distinct meanings. A state court's decision is contrary to clearly established federal law if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 406 (2000). By contrast, a state court adjudication involves an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08.

Petitioner asserts ineffective assistance of counsel as the basis for his habeas petition. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense."). To obtain relief under *Strickland*, Petitioner must prove that counsel's performance was: (1) deficient, such that "counsel's representation fell below an objective standard of reasonableness under prevailing professional norms," and (2) prejudicial, such that "there is a reasonable

4

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006) (citing *Strickland*, 466 U.S. at 688). The "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 696.

      A habeas petition raising a *Strickland* claim is subject to the "unreasonable application" analysis, not the "contrary to" criteria that applies to a state court decision that confronts a "materially indistinguishable" set of facts from existing Supreme Court precedent but reaches a contrary result. *See Lynn*, 443 F.3d at 247 ("An ineffective assistance claim asserted in a habeas petition is analyzed under the 'unreasonable application' clause of [§ 2254 (d)(l)] because it is 'past question that the rule set forth in *Strickland* qualifies as clearly established Federal law . . . .'" (citing *Williams*, 529 U.S. at 391)); *cf. Williams*, 529 U.S. at 391 (the *Strickland* test "requires a case-by-case examination"). Thus, Judge Fox erred by requiring Petitioner to present Supreme Court precedent with an identical fact pattern but contrary result.[1] *See Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("Nor does [§ 2254(d)(l)] prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts 'different from those of the case in which the principle was announced.'") (citing *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

      Applying *Strickland*, this Court finds that Petitioner's counsel's failure to thoroughly investigate the video footage was constitutionally deficient. The Second Circuit's decision in *Henry v. Poole*, 409 F.3d 48 (2d Cir. 2005) is particularly instructive. Counsel in *Henry* hung the fate of the defendant's case on apparently exculpatory evidence that was revealed at trial to

---

[1] The same logic applies to the R&R's criticism that Petitioner did not argue that the state court "disregarded the import" of indistinguishable case law in applying *Strickland*, *see* R. & R. at 11, as Petitioner need not rely on the "contrary to" clause in order to assert a claim of ineffective assistance of counsel.

be obviously incorrect. *Henry*, 409 F.3d at 64. Counsel elicited "an alibi for the wrong date—an error that plainly . . . undermined the defense"—and repeatedly urged the jury to focus on that evidence. *Id.* (quotation and citation omitted). The court deemed counsel's failure to recognize the obvious error of this strategy as "plainly fall[ing] below any acceptable level of professional competence." *Id.* at 64–65.

Petitioner's defense counsel similarly constructed a trial strategy that hinged, in large part, on an erroneous interpretation of surveillance footage. As in *Henry*, counsel repeatedly urged the jury to credit the video and encouraged them to play it as much as the jury wanted during deliberations. Although the prosecution would of course closely review the video and expose any holes in Petitioner's defense, prior to settling on this defense, counsel failed to ensure that the video did not also contain footage contradicting his planned argument. The prosecution was thus able to gut counsel's chief argument by using his own proffered "exculpatory" evidence against Petitioner. Counsel's level of diligence was not the "thorough investigation of law and facts relevant to plausible options" required by *Strickland*. 466 U.S. at 690–91; *see also Rompilla v. Beard*, 545 U.S. 374, 389 (2005) (holding counsel ineffective for failing to examine a readily accessible file he knew the prosecution would cull for aggravating evidence); *Fisher v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002) (holding that where counsel undertook no substantial pretrial investigation and "investigated" the case during the trial, his conduct was "patently unreasonable").[2] No reasonable attorney would have constructed a defense around

---

[2] The Court notes that counsel did not make a strategic decision to forego examining the surveillance footage. Although *Strickland* holds that actions or omissions by counsel which "might be considered sound trial strategy" do not constitute ineffective assistance, 466 U.S. at 689 (quotation omitted), counsel's failure to examine the videotape was based on "inattention, not reasoned strategic judgment," *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). Counsel's actions here cannot be viewed as a tactical choice; his decision to rely on video footage was based on a mistaken assumption resulting from a careless investigation of critical physical evidence.

evidence that was, in fact, damning to his client when its damning nature was readily discoverable upon even moderate scrutiny.

The Court thus finds that counsel's performance was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

### II.     Prejudice

To prevail, Petitioner must also "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Petitioner argues: (1) that Judge Fox applied the "wrong standard to the state court's 'prejudice' finding, incorrectly treating it as a 'factual' determination that [P]etitioner needed to rebut by 'clear and convincing evidence,'" and (2) that Judge Fox did not address Petitioner's assertion that Petitioner was prejudiced because there was a "reasonable probability" that the jury would have "convicted him only of second-degree manslaughter" if counsel had not foregone this lesser charge due to "his inadequate investigation" of the video. Pet'r's Obj. at 14, 16.  Each objection is overruled.

Petitioner's first objection incorrectly conflates the state court's findings of fact with its legal determination that defense counsel's error did not prejudice his case.  The state court found that "[Petitioner], after throwing the first punch, then grabbed, held and continued to hit the victim, while [Castillo] repeatedly hit the victim on the head with a tire iron." *Degraffenreid*, 138 A.D.3d at 456.  It consequently rejected Petitioner's assertions of prejudice, holding that "[w]hile the video evidence bears upon the defense . . . [Petitioner's] intent was established by evidence that he participated in the assault after his codefendant actually struck the victim with the tire iron." *Id.* at 457.  The first (i.e., that Petitioner held and hit the victim while Castillo repeatedly hit him over the head with a tire iron) is a finding of fact that Petitioner must either

7

show was unreasonable in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(2),[3] or rebut with clear and convincing evidence, *id.* § 2254(e)(l).[4] The second is a derivative legal conclusion. Judge Fox thus correctly delineated between the Appellate Division's various findings. *See* R. & R. at 12.

Petitioner has not shown that the state court's findings of fact were unreasonable, nor has he rebutted them with clear and convincing evidence. Petitioner points to conflicting testimony from eyewitnesses, medical reports that purportedly did not support a finding that the victim was beaten by multiple people, and expert testimony suggesting the same. Pet'r's. Obj. at 18. Despite those vagaries in the record, the state court's findings must stand under AEDPA's deferential standard of review. Jose Gonzalez, an eyewitness to the attack, testified that Petitioner held and continued to beat Jiminez as Castillo struck him with the tire iron. Pet'r's Mem. of Law at 8 (citing App'x 574, 580, 591, 632–33). Although Gonzalez was impeached with a prior inconsistent statement he made to the police on the day of the attack, he explained that he did so because he did not want to get involved and ultimately gave a truthful statement to the police after Jiminez died because Jiminez could not speak for himself. *Id.* (citing App'x 579, 594–99). He also gave a more detailed description of the attack than the other eyewitness, Ramon Echavarria, who, while not corroborating Gonzalez's account, also did not contradict it

---

[3] In reviewing whether the state court's decision was based on "an unreasonable determination of the facts" under Section 2254(d)(2), this Court accords substantial deference to the state court's factual determinations. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). A state court's determination of facts may be unreasonable when "the state court misstates the record or overlooks or misconstrues the evidence." *Saxon v. Lempke*, No. 09-CV-1057, 2014 WL 1168989, at *37 (S.D.N.Y. Mar. 21, 2014), *aff'd*, 618 F. App'x 10 (2d Cir. 2015) (citing *Wiggins*, 539 U.S. at 528).

[4] The Supreme Court has not yet defined the "precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Brumfield*, 135 S. Ct. at 2282 (quotation omitted). This Court proceeds "under the assumption that 'satisfaction of either inquiry is sufficient.'" *Fernandez v. Capra*, 916 F.3d 215, 221 n.1 (2d Cir. 2019) (quoting *Channer v. Brooks*, 320 F.3d 188, 194 (2d Cir. 2003)).

and had credibility issues of his own. *See* State's Opp. at 19 n.6 (citing App'x 329–30, 345, 347, 573–74). The medical examiner's report and hospital records also did not discredit Gonzalez's testimony, as they documented a number of severe injuries to the victim's body and head consistent with Gonzalez's account of the attack. *See id.* (citing App'x 670–76).

Petitioner's second objection is also overruled. Petitioner contends that the state court erred by applying a "sufficiency of the evidence" standard to find that there was no prejudice. Relying upon *Breakiron v. Horn*, 642 F.3d 126 (3d Cir. 2011), and *Crace v. Herzog*, 798 F.3d 840 (9th Cir. 2015),[5] Petitioner argues the standard used by the Appellate Division is contrary to the "reasonable probability" standard set forth in *Strickland*. This Court finds no such error in the Appellate Division's decision. The state court considered the evidence in the record and concluded that "any issue about how long before the assault defendant knew about the tire iron is largely irrelevant" to the question of prejudice. *Degraffenreid*, 138 A.D.3d at 457. It is apparent that the Appellate Division weighed the video evidence against the evidence "establishing that even after his codefendant began assaulting the victim with a tire iron defendant continued to participate in the assault." *Id.* at 456–57. The Appellate Division did not base its decision on a previous (or concurrent) holding that the evidence supported the verdict. *See Breakiron*, 642 F.3d at 139. The Appellate Division also did not presume that the jury, because it convicted

---

[5] In *Breakiron*, the Third Circuit held that a state court adjudication was an unreasonable application of *Strickland* because the state court had "merely noted the sufficiency of the evidence" on the record "without examining its weight." 642 F.3d at 140 (emphasis removed). The state court was obligated to examine the weight of the evidence when determining "whether there was a reasonable probability that the jury would have convicted him only of" the lesser charge if given the option. *Id.* Similarly, in *Crace*, the Ninth Circuit found that the Washington Supreme Court erroneously presumed that "because a jury convicted the defendant of a particular offense at trial, the jury could not have convicted the defendant on a lesser included offense based upon evidence that was consistent with the elements of both." 798 F.3d at 847. The court reasoned that "[n]othing in *Strickland* . . . forbids courts from considering the possibility that a jury would have convicted on a lesser included offense if given the option to do so." *Id.* at 849.

9

Petitioner of first degree manslaughter, could not have instead convicted him of second degree. *See Crace*, 798 F.3d at 847.

This Court thus cannot conclude that the Appellate Division unreasonably applied *Strickland*. Although the dramatic unravelling of Petitioner's defense likely had greater force than if the prosecution had presented that portion of the video footage in its case-in-chief,[6] the totality of the evidence—even had it been presented competently—does not create a reasonable probability that the jury would have found that Petitioner acted only recklessly, as opposed to intentionally. The fact remains that the video was strong affirmative evidence that the prosecution would have used against Petitioner in addition to the rest of its case. And setting aside all of the evidence that proved Petitioner knew well prior to the attack that Castillo had a tire iron, the fact that he persisted in the assault after he saw Castillo use the tire iron to beat Jiminez eviscerates any reasonable argument that he did not act with intent to cause serious physical injury to Jiminez, as the Appellate Division noted. *See Degraffenreid*, 138 A.D.3d at 457. Put differently, this is not a case where the "verdict [was] only weakly supported by the record." *Strickland*, 466 U.S. at 696.[7]

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Court declines to issue a certificate of appealability. Petitioner has not made a substantial showing of a denial of a federal right pursuant to 28 U.S.C. § 2253(c), and appellate review is therefore not warranted. *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Court also finds pursuant to

---

[6] *See United States v. Parness*, 503 F.2d 430, 438 (2d Cir. 1974) ("It is axiomatic that exculpatory statements, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force.").

[7] The Court thus adopts the R&R's finding that Petitioner has not shown prejudice, but modified according to the above reasoning.

28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and permission to proceed in forma pauperis for purposes of appeal is denied. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Date: **April 24, 2020**  
**New York, New York**

**VALERIE CAPRONI**  
**United States District Judge**